IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA D. LANE, an individual,

        Plaintiff,                        CV-08-428-ST

       v.                                 FINDINGS AND RECOMMENDATION

HOOD RIVER COUNTY, a public entity,
EDWARD CANNON; DENISE FORD; DEAN
GUESS; and DAVID MERIWETHER,

        Defendants.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Joshua Lane ("Lane"), was employed as a Road Technician with defendant, Hood River County ("the County"), from April 1999 until April 30, 2006. Lane originally filed this action *pro se* in Hood River County Circuit Court on January 31, 2008,[1] alleging claims against the County for violation of ORS 659A.043 and 659A.046 which require reinstatement or

---

[1] Defendants indicate that this case was originally filed in state court on November 7, 2007. Notice of Removal (docket #1), ¶ 2. However, the state court file stamp indicates it was filed January 31, 2008. *Id*, Attachment 2.

1 - FINDINGS AND RECOMMENDATION

reemployment of injured workers. *Lane v. Hood River County*, Hood River Circuit Court Case No. 080023. Notice of Removal (docket #1), Attachment 2. Lane subsequently retained an attorney and filed an Amended Complaint, adding three additional claims including two claims for constitutional violations under 42 USC § 1983. *Id*, Attachment 1. He also added several County employees as defendants: Public Works Department Manager Edward Cannon ("Cannon"), Public Works Director Dean Guess ("Guess"), Human Resources Director Denise Ford ("Ford"), and County Administrator David Meriwether ("Meriwether"). Defendants subsequently filed a Notice of Removal to this court, alleging federal jurisdiction based on the federal claims alleged in the Amended Complaint.

On June 10, 2008, Lane filed a Second Amended Complaint (docket #10) alleging three claims against the County for: (1) failure to reinstate in violation of ORS 659A.043 ("First Claim"); (2) failure to reemploy in violation of ORS 659A.046 ("Second Claim"); and (3) worker's compensation discrimination in violation of ORS 659A.040 ("Third Claim"). Second Amended Complaint, ¶¶ 19-32. He also alleges a single constitutional claim against all defendants for violation of his right to procedural due process under 42 USC 1983 ("Fourth Claim"). *Id*, ¶¶ 33-40. Defendants have now filed a Motion for Summary Judgment (docket #18) against all claims. For the reasons that follow, that motion should be GRANTED.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the

2 - FINDINGS AND RECOMMENDATION

pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted).

## UNDISPUTED FACTS

The parties set forth detailed factual information concerning the events leading up to the filing of this case, including the parties' dispute over whether Lane's job, as performed, was consistent with his job description. However, as discussed below, Lane's first three claims are barred for failing to give proper notice to the County as required under the Oregon Tort Claims Act ("OTCA"), ORS 30.275, and his Fourth Claim under § 1983 fails because Lane has failed to identify a constitutionally protected property interest. Accordingly, the court sets forth only those undisputed material concerning Lane's termination and evidence otherwise relevant to the two dispositive issues.

///

///

## I. Lane's Employment With and Termination by the County

The County hired Lane as a maintenance worker (now known as road technician) on April 19, 1999. Morrow Aff., Ex. A, p. 7. Starting in 2000 and continuing until Lane's termination six years later, Cannon was Lane's direct supervisor. Lane was a member of the County Road Department's collective bargaining unit and a beneficiary of a collective bargaining agreement ("CBA") between the County and the American Federation of State, County and Municipal Employees (AFSCME), Hood River Local No. 2503. Lane Decl., Ex. 1.

Prior to May 2005, Lane suffered at least three on-the-job injuries while working for the County. Lane filed workers' compensation claims related to those injuries. Following each of those injuries and workers' compensation filings, Lane was given light duty and returned to work when he was able. Morrow Aff., Ex. A, pp. 7-13.

On or about May 9, 2005, Lane injured his back while working as a road technician for the County. *Id* at 14. At that time, the County's Personnel Code provided that "light duty work may be offered if work is available within the physician's restrictions" and would "be limited in most cases to 30 calendar days." Lane Decl., Ex. 2, p. 12, ¶ 35.8. Additionally, a County policy provided that "[i]f the employee is unable to obtain a full release after 30 calendar days, they will be placed on medical leave for a specified period or until they can resume full duties." Ford Aff., Ex. A. The County's Personnel Code also provided as follows:

> In the event an employee receives a permanent disability award and/or has exhausted all accrued paid leave, used all Family Medical Leave entitlement and is no longer able to perform the essential functions of the job, with or without reasonable accommodation, the County paid medical, dental and life

4 - FINDINGS AND RECOMMENDATION

>       insurance benefits shall be canceled, and the employee shall be
>       terminated from County employment.

Lane Decl., Ex. 2, p. 13, ¶ 35.9.

Following his May 2005 injury, Lane was placed on a light duty assignment. Lane Decl., ¶ 3. Lane was later placed on medical leave when he was unable to provide a full medical release to work.[2] Ford Aff., ¶ 4; Cannon Aff., ¶ 5. Thereafter, he and his wife provided the County with periodic updates on his condition, both through Cannon and Ford. *Id*.

Sometime in the fall of 2005, Lane informed Ford that he had been referred to a back surgeon in Portland and would be undergoing back surgery. Lane then underwent back surgery in January 2006. Ford Aff., ¶ 7.

On March 13, 2006, Ford sent Dr. Makker, M.D., a job description for the Road Technician position. Rissberger Decl., Ex. A ("Ford Depo."), pp. 40-41 (Ex. 34). That job description lists an essential duty as "[p]hysical demands includ[ing] . . . lifting regularly up to 30 pounds." *Id*, p. 40. Although the physical demands of the job also specify that the employee must "occasionally lift and/or move up to 50 pounds," *id*, p. 41, that lifting requirement is not included as an essential duty of the job. Lane understood that he was required to perform all the essential duties of his job as a road technician. Despite a 30-pound lifting restriction, he was able to perform all of his job duties with no more accommodation than he and his fellow employees customarily provided one another. Lane Decl., ¶ 20; Martin Decl., ¶ 3.

---

[2] Lane disputes that he was provided with 30 calendar days of light duty work. Plaintiff's Response to Concise Statement and Supplemental Statement (docket #35), ¶¶ 5-6. However, he has alleged no claim arising out of that alleged violation of County policy, and any such claim would be barred by the same failure to provide an adequate tort claims notice to the County as bars his first three claims. Thus, the dispute is immaterial.

5 - FINDINGS AND RECOMMENDATION

On or about April 2, 2006, Ford received a letter in which Dr. Makker stated:[3] "I have completed the return-to-work form for Joshua Lane. He is released to return to regular work with a 30-lb. lifting restriction. I also reviewed the job analysis for 'road technician,' and I feel this job is within his capabilities and work restriction." Ford Aff., Ex. E. Ford also received a certification on a SAIF-approved form, signed by Dr. Makker, stating that Lane was released to full duty with a 30-pound lifting restriction. Ford Depo., pp. 42-43 (Ex. 35). Ford shared this information with Guess and Cannon. *Id*, ¶ 9; Guess Aff., ¶ 4; Cannon Aff., ¶ 6.

On April 4, 2006, Ford wrote a letter to Lane advising him that the County was in receipt of a final and permanent release from his doctor and asking him to meet to "exchange essential information regarding your job position and your physician's release" and to:

> 1. Identify the essential and nonessential functions of the job;
> 2. Ask that you provide information about your medical condition and any job limitations you feel may be caused by that condition;
> 3. Any accommodations you feel may be necessary in order to perform your job duties;
> 4. Assess the effectiveness of any identified accommodations.

Ford Decl., Ex. H.

The letter did not specifically mention that the meeting could result in the termination of Lane's employment with the County or that he would have any right to appeal or a post-termination hearing.

The County and its management had a financial incentive to rid themselves of an employee who had filed several workers' compensation claims and caused increases to

---

[3] Less than a month earlier, on or about March 7, 2006, Ford received a medical report from Dr. Makker stating that Lane was not able to perform the duties of the job and had a permanent 25-pound lifting restriction. Ford Aff., ¶ 8 and Ex. D. However, given that the County received Dr. Makker's later letter revising the lifting restriction to 30 pounds prior to meeting with and then terminating Lane, the latter letter is more relevant to Lane's claims.

premiums. Ford Depo., pp. 126, 128. On April 11, 2006, Ford met with Guess and Cannon to discuss Lane's permanent 30-pound lifting restriction and how it would affect Lane's ability to perform his job. Ford Aff., ¶ 12 & Ex. G. Ford, Guess, and Cannon generated a list of job functions they thought might be affected by the 30-pound lifting restriction. *Id*, Ex. G.

On April 19, 2006, Guess, Cannon and Ford met with Lane, his wife (Nancy Lane), and his union representative, Eric Martin ("Martin"). Guess, Cannon, and Ford attended that meeting for the undisclosed purpose of convincing Lane (incorrectly) that he could not perform his job. Lane attended the meeting believing he was going to be reinstated to his job and told his managers he was ready to come back to work. Lane Decl., ¶ 7. At that time, Lane knew that his doctor had declared him medically stationary and had imposed a 30-pound lifting restriction. Morrow Aff., Ex. A, p. 21.

During the April 19, 2006 meeting, Lane was asked about his ability to perform certain tasks. He attempted to explain his abilities in terms of how the job was actually performed and the types of accommodation he might need, such as a stepping stool to get into the grade-all. Lane Decl., ¶¶ 11-19. Ford, Cannon and Guess responded by rolling their eyes while he was speaking and then interrupting him and telling him he could not perform certain tasks which he said he could perform. Lane Decl., ¶ 7; Martin Decl., ¶ 4. Several times, Cannon asked Lane whether he would prefer to go back to school. *Id*.

At some point during that meeting, Lane expressed an interest in taking any other jobs that were available. Lane Decl., ¶ 21. Ford told Lane and Martin that there would be a follow-up meeting before any decision was made. *Id*. Despite that representation, Lane was not asked to meet with Ford, Guess, or Cannon again. Instead, on April 27, 2006, Guess wrote a letter to

7 - FINDINGS AND RECOMMENDATION

Lane informing him that his employment was terminated effective April 30, 2006, "[b]ecause of the number of every day functions that we identified you can no longer perform in your job." *Id*, ¶ 23 & Ex. 8.

## II. Post-Termination Communications

On June 7, 2007, the County's General Counsel sent Lane's worker's compensation attorney a proposed "Agreement and General Release" ("Proposed Settlement Agreement"). Ford Depo., pp. 69-71. An attached email referred to the Proposed Settlement Agreement as a "severance agreement" and indicated that the County assumed that any monetary compensation for Lane's claim would have been part of his SAIF settlement, but would nonetheless offer Lane $500 for a complete release of all claims and his agreement not to pursue reinstatement or reemployment with the County in any position. *Id*.

On June 16, 2006, Lane entered into a Claims Disposition Agreement with SAIF. Lane Decl., ¶ 24. The same day, his worker's compensation attorney provided Lane with a copy of the Proposed Settlement Agreement from the County to settle "any and all claims . . . arising out of [Lane's] employment with [the County]." Lane Decl., Ex. 10, p. 1. The Proposed Settlement Agreement provided that, in exchange for $500, Lane agreed that he had "resigned and voluntarily quit his employment," and would release the County and all its employees "from any and all known and/or unknown claims . . . which [Lane] ever had, now has, or hereafter may have on account of, or in any way arising out of [his] employment relationship with [the County] *or the termination of that relationship.*" *Id*, pp. 1-2 (emphasis added). The Proposed Settlement Agreement expressly released claims under Oregon anti-discrimination statutes, "any other federal, state, or local statute . . . governing the employment relationship or the termination

thereof," excepting previous worker's compensation claims and claims under ORS Chapter 656, and also provided that Lane would "not seek or accept reemployment with the County." *Id*, p. 2.

On June 22, 2006, Lane responded to the Proposed Settlement Agreement by writing a letter to the County's attorney stating:

> I have decided not to sign your papers at this time. It is not in my best interest to sign all my rights away for a mere $500. I am currently seeking out legal council [sic] to represent me in this matter. I have several reasons to suspect that the County over looked the labor laws when they fired me.
>
> I am truly amazed that you thought that I would give up the right to pursue the county and specific members of staff for a small amount of money.

Lane Decl., ¶ 24 & Ex. 11.

Following Lane's termination, the County advertised several jobs which Lane asserts he should have been offered or was qualified to perform, including jobs as a 911 Dispatcher, a Flagger, and a Weed and Pest Technical/Code Enforcement Officer. Lane Decl., Ex. 12; Ford Decl., ¶ 19. However, as discussed in more detail below, Lane's claims fail for reasons unrelated to the County's processing of those job openings.

In January 2008, Lane filed this case in Hood River County Circuit Court.

## FINDINGS

### I. Tort Claims Notice (First, Second, and Third Claims)

The County seeks dismissal of the First, Second, and Third Claims because Lane failed to provide the County with a tort claim notice as required under ORS 30.275.

///

///

9 - FINDINGS AND RECOMMENDATION

### B. **OTCA Notice Requirements**

Oregon law permits tort claims against public bodies, ORS 30.265(1), but requires compliance with specified notice provisions. Notice of claims "arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300" must be "given as required in this section." ORS 30.275(1). This notice requirement may be satisfied by either "formal" notice under ORS 30.275(4) or "actual" notice under ORS 30.275(6).

"Formal" notice:

> is a written communication . . . containing:
> (a) A statement that a claim for damages is or will be asserted against the public body or an officer, employee or agent of the public body;
> (b) A description of the time, place and circumstances giving rise to the claim, so far as known to the claimant; and
> (c) The name of the claimant and the mailing address to which correspondence concerning the claim may be sent.

ORS 30.275(4).

"Actual" notice is a somewhat more expansive concept, encompassing "any communication by which any individual to whom notice may be given . . . acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body." ORS 30.275(6).

### B. **Lack of Effective Notice**

Lane contends that his June 22, 2006 letter, when viewed in context, provided the County with either "formal" notice of his claims as required by ORS 30.275(4) or "actual" notice as

10 - FINDINGS AND RECOMMENDATION

allowed under ORS 30.275(6).  The letter emphatically states that Lane rejects the settlement proposal spelled out in the County's Proposed Settlement Agreement.  It also clearly states that Lane has "several reasons to suspect that the County over looked the labor laws" when it terminated his employment.  Nevertheless, the letter does not satisfy ORS 30.275.

First, "formal" notice under the OTCA requires a written communication "from a claimant or representative of a claimant."  ORS 30.275(4) (emphasis added).  To the degree that Lane's notice relies on the contents of the County's Proposed Settlement Agreement, it is not a communication *from* Lane or his representative.  The OTCA's "formal" notice provision clearly contemplates that the communication will be the *claimant's* description of the facts upon which his or her claim is based, not a communication from the public body to the claimant attempting to settle a potential dispute.

Although this defect is not an issue for "actual" notice which may be based on "*any* communication," Lane's letter also fails to satisfy another requirement for both "formal" and "actual" notice under the OTCA.  It does not state that Lane is or will be asserting a claim against the County and gives no description of the time, place and circumstances of any such claim.  Lane disagrees, pointing out that his letter:  (1) specifically references his termination and his belief that the County violated labor laws in firing him; (2) states that he is unwilling to "sign all [his] rights away" and is seeking legal representation; and (3) refers back to the County's settlement proposal, which in turn identifies any number of possible claims which might arise out of a termination.  However, as demonstrated by two cases, one decided by the Oregon Supreme Court and one decided by this court, this information is insufficient to satisfy the OTCA's notice requirements.

11 - FINDINGS AND RECOMMENDATION

In *Flug v. Univ. of Oregon*, 335 Or 540, 546, 73 P3d 917, 920 (2003), the plaintiff's attorney sent three letters which the plaintiff later argued were sufficient to satisfy the OTCA's notice requirements for a claim for intentional infliction of emotional distress ("IIED"). There, as here, the letters "did not mention specifically the possibility of [a particular] claim," but referenced a prior meeting when the plaintiff's supervisors gave her a memorandum "outlining her options with respect to her employment," including resigning or returning to work under specified conditions. *Id* at 543, 73 P3d at 919. Despite the fact that the letters stated that the defendant's demands were unlawful and unreasonable, the court found them insufficient to satisfy the requirement to advise the public body of an intent to sue:

> We need not address whether the letters allowed defendant to acquire actual knowledge of the 'time place and circumstances,' giving rise to plaintiff's IIED claim, because we conclude that the other requirement of the statute, *viz.*, communication of an intent to assert a claim, is dispositive. In that regard, there is no issue whether the letters communicated information that would cause a reasonable person to conclude that plaintiff intended to assert a claim against defendant. They did not. Although the letters stated that defendant's demand for doctors' releases was unlawful, and that other demands and conditions imposed by plaintiff's supervisors were unreasonable, the import of those statements merely is that plaintiff regarded that behavior as contrary to law or unfair, not that plaintiff intended to sue over those matters.

*Id* at 554, 73 P2d at 924-25.

There is no logical basis on which to distinguish the notice in this case from that in *Flug*. In his letter, Lane does state that he is unwilling to give up his right to pursue the County by signing the County's settlement proposal. He also states that he "suspects" the County violated labor laws in firing him. However, as in *Flug*, these statements merely reflect Lane's belief that the County's behavior was contrary to law, not that he intended to sue. Given that *Flug* was

12 - FINDINGS AND RECOMMENDATION

already represented by counsel, Lane's statement that he was "seeking out" counsel cannot change the outcome.

This conclusion is further supported by *Traxler v. Multnomah County*, 2008 WL 282272 (D Or, Jan. 29, 2008), which followed *Flug*. In that case, the plaintiff argued that Multnomah County received notice of her tort claims "through the combination of her former counsel's extensive discussion of the claims with County counsel, followed by an email communication which included [plaintiff's] specific demands for an amicable solution." *Id* at *7. The plaintiff's email gave "formal" notice of her intent to file a claim for violation of the Oregon Family Leave Act, but was "silent about any facts giving rise to disability, age, or whistleblower claims." *Id* at *8. Judge King concluded that statements by the plaintiff's former attorney that the County had committed "wrongful actions" and otherwise acted "contrary to law" were insufficient to provide notice of an intent to sue. "As in *Flug*, [the attorney's] email does not convey an intent to sue even though it characterizes much of [Multnomah County's] behavior as unreasonable and contrary to law." *Id*. The letter, while clearly indicating an intent to sue, was sufficient only as to those claims about which she conveyed factual information: "The . . . letter from Traxler herself clearly states the intent to file a tort claim. It is focused entirely, however, on the facts concerning her family medical leave claims." *Id* at *9. Thus, Judge King concluded that Traxler had not met the OTCA notice requirements for claims other than her family medical leave act claim. *Id*.

Lane's letter suffers from the same fatal flaw as the communications in *Flug* and *Traxler*. While he characterizes the County's conduct as a suspected violation of labor laws, flatly rejects the County's Proposed Settlement Agreement, and warns that he is seeking out legal counsel,

Lane never states that he intends to assert a claim against the County or its employees, officers or agents. Lane's "termination was so unexpected that [he] was fairly sure there had been a violation of law." Lane Decl., ¶ 24. However, under the clear guidance of *Flug* and *Traxler*, his written conviction to that effect is simply not enough to comply with the notice requirements of the OTCA. Accordingly, the County is entitled to summary judgment against the First, Second, and Third Claims.

## II. Due Process (Fourth Claim)

In his remaining Fourth Claim, Lane contends that defendants violated his right to procedural due process by failing to provide him with adequate notice of the charges against him and an opportunity for a pre-termination hearing and by failing to provide him with a post-termination hearing. Defendants contend that they are entitled to summary judgment against this claim because Lane fails to allege any constitutionally protected property interest.

### A. Requirement of a Protected Property Right

"In procedural due process claims, . . . [o]ur analysis proceeds in two steps: 'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Humphries v. County of Los Angeles*, 554 F3d 1170, 1184-85 (9th Cir 2009), quoting *Ky. Dept. of Corr. v. Thompson*, 490 US 454, 460 (1989). Property interests "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Ed. v. Loudermill*, 470 US 532, 538 (1985), quoting *Bd. of Regents v. Roth*, 408 US 564, 577 (1972) (additional citation omitted). A finding that an employment action is

14 - FINDINGS AND RECOMMENDATION

conditioned upon "compliance with certain specified procedures" or that an "employee is merely given certain procedural rights" is insufficient to create a property interest. *Bishop v. Wood*, 426 US 341, 345, 347 (1976). Multiple Ninth Circuit cases recognize this distinction:

> [P]rocedural requirements, without more, do not create constitutionally cognizable property interests. To hold otherwise would immediately incorporate virtually every regulation into the Constitution. This court has repeatedly held that procedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest. A constitutionally protected interest has been created only if the procedural requirements are intended to be a significant substantive restriction on decision making. If the procedures required pose no significant limitation on the discretion of the decision maker, the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures.

*Clemente v. United States*, 766 F2d 1358, 1364-65 (9th Cir 1985) (citations and internal punctuation omitted).

### B. Lack of a Protected Property Right

Lane contends that he has a constitutionally protected property right arising from two sources, one statutory and one implicit in the "just cause" provisions of the CBA. This contention does not withstand scrutiny.

The two Oregon statutes on which Lane relies are ORS 659A.043 and ORS 659A.046, which provide reinstatement and reemployment rights to injured workers. Those statutes mandate that, upon demand, a worker who sustains a compensable injury shall be reinstated to the worker's former position (if it exists and is available) or an existing vacant and suitable position if the worker is not disabled from performing the duties of those positions, ORS 659A.043(1), or reemployed at another available and suitable position if the worker is disabled

15 - FINDINGS AND RECOMMENDATION

from performing the duties of the worker's former regular employment, ORS 659A.046. Any such reinstatement or reemployment is subject to seniority rights and other employment restrictions in collective bargaining agreements (ORS 659A.043(2); ORS 659A.046(4)) and terminates three years from the date of injury or sooner if the worker participates in vocational assistance under ORS 656.340, accepts suitable employment with another employer after becoming medically stationary, or refuses a bona fide offer of suitable light duty or modified employment prior to becoming medically stationary (ORS 659A.043(3)(a); ORS 659A.046(3)). Violation of either statute is an unlawful employment practice. ORS 659A.043(5); ORS 659A.046(6).

Here, neither the statutes Lane cites, the applicable CBA (Lane Decl., Ex. 1), nor the County Personnel Code (Lane Decl., Ex. 2) impose any significant substantive limitations on the County's discretion to determine whether an employee is able to perform the essential functions of his former position or any other potential position.

The CBA vests the "rights to manage in every respect the functions of . . . its employees" exclusively with the County and does not address workers' compensation matters other than to require the maintenance of workers' compensation insurance on all employees, set limitations on the use of accrued leave, and require the County to continue to contribute toward the cost of medical, dental, and life insurance during workers' compensation leave. Lane Decl., Ex. 1, pp. 8, 18. The CBA allows disciplinary termination for just cause, but does not discuss termination following an injury and based on physical inability to perform the position. *Id*, p. 25. Furthermore, any cause of action under the CBA "would not rise to a constitutionally

protected interest inasmuch as it was not an interest created by state law." *Mustafa v. Clark County Sch. Dist.*, 157 F3d 1169, 1178 (9th Cir 1998).

The County Personnel Code requires compliance with Oregon law concerning worker's compensation, including reinstatement and reemployment rights. *Id*, p. 13, ¶ 35.10, 35.13. However, it also explicitly reserves unto the County the right to make termination decisions:

> These policies are not to be construed as guaranteeing employment to any employee for any specified period of time. The County reserves the right to terminate employees at any time, with or without reason, with or without notice, as determined solely by County management in its sole discretion. These policies do **not** create a contract, express or implied but are provided as guidance.

Lane Decl., Ex. 2, p. 2 (emphasis in original).

Besides, Oregon law precludes a constitutional claim based on an employment contract.

> Employment contracts of public employes may create rights to continued employment over and above that provided by statute or regulation. But such an employment contract, standing alone, does not create the kind of interest that triggers the requirement of a due process hearing before the government withdraws the benefits of the contract, *i.e.*, breaches it. In such a situation, the public employe's remedies are measured by the law of contracts, not by constitutional law.

*Papadopoulous v. Or. State Bd. of Higher Ed.*, 14 Or App 130, 168-69, 511 P2d 854, 871-72 (1973).

Lane also contends that Oregon's statutes on reinstatement and reemployment vest him with a legitimate claim of entitlement to return to work. However, the statutes are more properly construed as providing injured workers with the right to demand reinstatement or reemployment, followed by the right to a determination of whether the worker is or is not "disabled from performing" the duties of the worker's former position or of another available and suitable

17 - FINDINGS AND RECOMMENDATION

position. In the event the worker is not reinstated or reemployed, and seeks to challenge the employer's decision, the reinstatement and reemployment statutes also each provide that "[a]ny violation of this section is an unlawful employment practice," ORS 659A.043(5); ORS 659A.046(6), which in turn provides a basis for filing a civil action under ORS 659A.885. *See* ORS 659A.885(2) (incorporating ORS 659A.043 and 659A.046). In any such action, the court may award appropriate equitable relief, including reinstatement. ORS 659A.885(1). Rather than giving Lane a legitimate claim of entitlement to reinstatement or reemployment, they instead give Lane a legitimate claim of entitlement to an opportunity to demonstrate that he could indeed perform the essential functions of his former job or of another available and suitable position. Ultimately, his procedural protection lies in the statutory availability of a civil action challenging the County's decision that he was unable to perform the essential functions of his job.

This case is indistinguishable from *Deen v. Darosa*, 414 F3d 731 (7th Cir 2005), in which the Seventh Circuit found no constitutionally protected property interest based on policy directives affording procedural protections to members of the Illinois State Police who sought reinstatement from medical leave. This court is persuaded by *Deen's* reasoning that because an employee "did not have a constitutionally protected property interest in reinstatement [or reemployment] itself, but, rather, had a more limited interest in an opportunity to establish his [ability to perform the essential functions of his job or another available and suitable position], he was not owed the full complement of due process protections set forth in *Loudermill*." *Deen*, 414 F3d at 736, citing *Loudermill*.

Moreover, if ORS 659A.043 or 659A.046 provided a property interest for due process protection purposes, injured workers aggrieved by employment decisions concerning their ability

18 - FINDINGS AND RECOMMENDATION

(or inability) to perform their jobs or other suitable and available jobs could do an end-run around the notice provisions of ORS 30.275. As just discussed, Oregon's reinstatement and reemployment statutes provide a basis for a statutory tort claim under ORS 659A.885. Any such claim is covered by the OTCA's notice requirements of ORS 30.275. However, "Oregon's statute of limitations for personal injury actions, [ORS] 12.110, rather than the Oregon Tort Claims Act, [ORS] 30.275, applies to a § 1983 action." *Sain v. City of Bend*, 309 F3d 1134, 1139 (9th Cir 2002). By recasting claims for violations of Oregon's reinstatement and reemployment laws as claims for violations of the constitutional right to due process, aggrieved employees could effectively resurrect claims that would otherwise be barred if the employee failed to give the required notice to a public employer.

Because the Oregon statutes creating reinstatement and reemployment rights do not create a property interest in continued employment, Lane's Fourth Claim fails.

## RECOMMENDATION

For the reasons stated above, defendants' Motion for Summary Judgment (docket #18) should be GRANTED. Accordingly, Judgment should be entered in favor of defendants.

## SCHEDULING ORDER

Objections to these Findings and Recommendations, if any, are due April 6, 2009. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

///

///

///

19 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 20th day of March, 2009.

                                          s/ Janice M. Stewart _____
                                          Janice M. Stewart
                                          United States Magistrate Judge